NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**FRANCIS M. JACKSON,**
*Claimant-Appellant*

v.

**ROBERT A. MCDONALD, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2014-7088

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 12-738, Judge Mary J. Schoelen, Judge Robert N. Davis, Judge William A. Moorman.

---

Decided: June 2, 2015

---

KENNETH M. CARPENTER, Law Offices of Carpenter Chartered, Topeka, KS, argued for claimant-appellant.

BARBARA E. THOMAS, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee.  Also represented by STUART F. DELERY, ROBERT E. KIRSCHMAN, JR., KIRK T. MANHARDT; Y. KEN LEE, RACHAEL BRANT,

United States Department of Veterans Affairs, Washington, DC.

————————————

Before NEWMAN, REYNA, and TARANTO, *Circuit Judges.*

TARANTO, *Circuit Judge.*

The Department of Veterans Affairs denied an attorney's request for payment of a contingent fee that he claimed on the basis of his representation of a veteran seeking disability benefits. The Court of Appeals for Veterans Claims upheld the denial, concluding that 38 U.S.C. § 5904, which provides for direct Department payment of contingent fees, does not apply in this case because of the timing of the veteran's death—before he received any disability compensation. *Jackson v. Shinseki*, 26 Vet. App. 460, 464 (2014). We reject that statutory interpretation, concluding that § 5904 authorizes the fee payment in the circumstances of this case. We also reject, as misinterpreting a regulation, the Department's sole basis for not exercising the § 5904 authority to pay the requested fee. Accordingly, we reverse the Veterans Court's decision denying the fee.

## BACKGROUND

Francis Jackson, an attorney, entered into a fee agreement with H. M. Finemore, a veteran, in 1998. They agreed that Mr. Jackson would represent Mr. Finemore in pressing the latter's claim for veteran's benefits based on back, leg, and foot disabilities. The agreement included the following provision (J.A. 30):

> 3. CONTINGENT FEE. Client agrees to have the Department of Veterans Affairs pay to the attorney on the client's behalf a fee equal to 20 percent of the total amount of any past-due benefits awarded on the basis of the Client's claim with the U.S. Department of Veterans Affairs. It is

understood that this Contingent fee is to be paid by the VA directly to the Attorney from any past-due benefits awarded on the basis of the Client's claim. However, Client remains liable for the amounts of the contingent fee of 20 percent of any past-due benefits awarded on the basis of the Client's claim until and unless the fee is paid to the Attorney by the VA, and Client agrees to pay said contingent fee directly to Attorney in the event the VA fails to do so.

After a long review process, Mr. Finemore received a favorable ruling from the Board of Veterans' Appeals in May 2007, but the ruling was limited: it did not resolve all issues needing resolution for a final determination on the claim for benefits. Specifically, the Board concluded that Mr. Finemore's disabilities were service connected. But it remanded the case to the relevant Regional Office of the Department for disability-rating and effective-date determinations, which together would fix the amount of disability-benefits compensation due Mr. Finemore.

Mr. Finemore died on January 20, 2008, before the regional officer issued a decision implementing the Board's order. On January 31, 2008, the officer—unaware of Mr. Finemore's death—signed a "Rating Decision" that determined the appropriate disability ratings for particular periods, from the effective date of the award forward, for Mr. Jackson's service-connected disabilities. The Department received news of Mr. Finemore's death a few days later, on February 4, 2008. The Veterans Court noted that the record does not disclose whether the Department ever mailed out the Rating Decision. *Jackson*, 26 Vet. App. at 461. And it is undisputed that, in light of Mr. Finemore's death, the Department never paid any compensation to Mr. Finemore or his estate. *See* 38 U.S.C. §§ 5112(b), 5121; *Padgett v. Shinseki*, 643 F.3d 950, 955 n.5 (Fed. Cir. 2011).

In January 2009, Mr. Finemore's surviving spouse, through Mr. Jackson, filed a claim for accrued benefits based on what Mr. Finemore was due when he died. *See* § 5121. A few months later, the Regional Office awarded accrued benefits, giving as a reason for the decision the exact disability ratings that had been set forth in the 2008 "Rating Decision." Two months later, the office issued its calculation of the total amount of the award, $136,652, which followed mechanically from those rating determinations. The Department paid $109,321.60 of the total to Mr. Finemore's surviving spouse, and it withheld $27,330.40 (*i.e.*, twenty percent) "for possible attorney fees." J.A. 91.

The withholding resulted from Mr. Jackson's request to the Department to pay him a twenty-percent contingent fee. He based the request on his agreement with Mr. Finemore, the Department's determination to grant Mr. Finemore disability benefits, and the statutory provision for direct payment of contingent fees, 38 U.S.C. § 5904(d). The Department denied Mr. Jackson's request, based on Mr. Finemore's death and the absence of an agreement between Mr. Jackson and Mrs. Finemore. The Department reasoned that "[t]he past-due benefits can only be payable as accrued benefits and if the accrued benefits claimant has signed a fee agreement with" the attorney seeking the fee payment. J.A. 52.

After the Board reached a similar conclusion, Mr. Jackson appealed under 38 U.S.C. § 7252 to the Veterans Court, which upheld the denial of Mr. Jackson's claim for fees. It concluded that the Department never awarded Mr. Finemore any past-due benefits on the basis of his claim within the meaning of § 5904(d). *Jackson*, 26 Vet. App. at 463–64, 467. It also concluded that the subsequent grant of accrued benefits to Mr. Finemore's surviving spouse did not implicitly constitute an award to Mr. Finemore on the basis of his original claim for disability benefits, again interpreting § 5904(d)'s requirements. *Id.*

at 464–67. Mr. Jackson filed a timely appeal to this court under 38 U.S.C. § 7292(a).

## DISCUSSION

We have jurisdiction to review a decision of the Veterans Court where a party challenges the interpretation or validity of a statute or regulation or the interpretation of constitutional provisions. 38 U.S.C. § 7292(c). In conducting that review, we must decide "all relevant questions of law." § 7292(d)(1). In a case like this one, not involving a constitutional issue, we may not "review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case." § 7292(d)(2). "[S]tatutory interpretations by the Veterans Court are reviewed de novo" by this court. *Cook v. Principi*, 353 F.3d 937, 938 (Fed. Cir. 2003).

### A

Section 5904 establishes the congressionally authorized framework for attorneys to represent benefits claimants at the Department on a contingent-fee basis. It limits when an attorney can begin charging a client for representation, § 5904(c), caps a contingent fee at twenty percent of the amount of past-due benefits awarded, § 5904(d)(1), and states the allowable bases for such fees, § 5904(d)(3). It also provides that the parties may agree that the fee "is to be paid to the agent or attorney by the Secretary directly from any past-due benefits awarded on the basis of the claim." § 5904(d)(2)(A)(i). The statute then provides in similar language that, when there is such an agreement, "[t]o the extent that past-due benefits are awarded in any proceeding . . . the Secretary may direct that payment of any fee to an agent or attorney . . . be made out of such past due benefits." § 5904(d)(3).

There is no dispute that Mr. Jackson and Mr. Finemore "entered into a valid contingency fee agreement" that satisfied § 5904's requirements. *Jackson*, 26

Vet. App. at 461. The Department nevertheless denied Mr. Jackson's claim for fees because it interpreted the statutory phrase "past-due benefits awarded on the basis of the claim," § 5904(d)(2)(A)(i), to require more than determinations that a veteran's disability is service connected and of the veteran's disability ratings for the periods at issue from the effective date of the award forward. We conclude, to the contrary, that the statute does not require more than those determinations—which were made for Mr. Finemore's claim.

This is not the first time we have resolved a dispute over the meaning of "past-due benefits awarded on the basis of the claim." In *Snyder v. Nicholson*, 489 F.3d 1213 (Fed. Cir. 2007), we rejected the Department's interpretation that the amount of an "award," as used in § 5904, depended on "the amount actually payable" to the veteran. *Id.* at 1219. Mr. Snyder, under a proper contingent-fee agreement, represented a veteran who received a determination from the Department that he had a service-connected disability, followed by a rating decision that assigned a disability rating and effective date for that rating. The Department gave the veteran a 70-percent disability rating, but it could not pay him that amount: because he was incarcerated, statutes and regulations required that the Department pay him at only the 10-percent level. When the Department then paid Mr. Snyder his contingent fee based on the 10-percent, rather than 70-percent, level, we rejected the Department's position, holding that the statute commanded payment based on the 70-percent rating. "The word 'award' is clear and unambiguous," we said, and "means the amount stated as the award for success in pursuit of a claim for benefits." *Id.* That amount "is distinct from the amount payable" to the veteran, *id.*, and is "determined by the claimant's disability rating—beginning on the effective date and continuing through the date of the award," *id.* at 1218.

Although the court in *Snyder* was interpreting the amount of the relevant award under § 5904, not whether an award occurred, the court's explanation that the award is determined by the service-connection determination, disability rating, and effective date, and not what was actually paid or payable to the veteran, carries over to the particular circumstances of this case. When the Department determines that a veteran suffers from a service-connected disability, it "must assign a disability rating to the claimant by determining 'the average impairments of earning capacity resulting from [the claimant's] injuries in civil occupations.'" *Snyder*, 489 F.3d at 1218 (quoting 38 U.S.C. § 1155). That rating, combined with the Department's determination of an effective date for the rating, constitutes an award of past-due benefits, at least in the circumstances presented here. The Department has offered us no principled distinction, relevant to this context, between a determination of the disability ratings and effective dates, the two factors that dictate the award amount, and the final calculation of that amount. Nor has the Department contended that, once the foregoing determinations were made in this case, anything material remained to be done to calculate the amount of compensation, which was fixed mechanically by using figures, set by statute, that defined the monthly payment for a given disability rating for the periods covered by the award of past-due benefits. *Id.*; 38 U.S.C. §§ 1114–15, 1134–35; 38 C.F.R. § 20.609(h)(3)(i) (2007) (currently codified as amended at 38 C.F.R. § 14.636(h)(3)(i)); *see* U.S. Dep't of Veterans Affairs, Compensation, www.benefits.va.gov/compensation/resources_comp01.asp.[1]

---

[1]    There is no suggestion here that the delay between the rating decision and the calculation of the past-due-benefits amount based on that decision altered the

All the determinations required for an award were made for Mr. Finemore's claim. The Board determined that Mr. Finemore's disabilities were service connected in its May 2007 decision. In the January 31, 2008 rating decision, the regional officer made all the remaining non-mechanical judgments: he determined the appropriate disability ratings for Mr. Finemore's service-connected disabilities for each period at issue from the effective date forward. By those two decisions, which left nothing but clerical computations to complete in order to produce the bottom-line dollar amount, the officer "awarded" "past-due benefits," and the award was "on the basis of the claim" Mr. Finemore had before the Department. § 5904(d)(2)(A)(i).

Nothing in the statutory language requires more. In particular, nothing in the statute requires that the decision be communicated to the veteran or, as *Snyder* makes clear, that money actually be paid out. *See* 489 F.3d at 1217 n.1 (attorney must be paid 20 percent of full award even if veteran will never receive full award amount). And the statute does not require announcement of a dollar figure, when calculating that figure requires no more than a clerical task consisting of applying the substantive determinations (of ratings for given periods) to standard statutory tables. Indeed, it is common to refer to an "award" of "benefits" when the dollar amounts are

---

calculated amount. We note that this court has affirmed the Department's refusal to pay "interest or apply[] cost-of-living increases to retroactive awards." *Arnesen v. Principi*, 300 F.3d 1353, 1359 (Fed. Cir. 2002); *see Smith v. Principi*, 281 F.3d 1384, 1388 (Fed. Cir. 2002). Moreover, in a case like this, current Department regulations fix the amount as of the "date of the initial disability rating decision." 38 C.F.R. § 14.636(h)(3)(i).

uncalculated, as when future benefits are awarded, to be calculated based on statutory tables that will change as the years pass. *See* 38 U.S.C. § 5110 (specifying "[e]ffective dates of awards," even though calculated award amount may change); *see also* Veterans' Compensation Cost-of-Living Adjustment Act of 2014, Pub. L. No. 113-181, § 2, 128 Stat. 1916, 1916–17; Veterans' Compensation Cost-of-Living Adjustment Act of 2013, Pub. L. No. 113-52, § 2, 127 Stat. 582, 582–83; 38 U.S.C. § 1104. The term "award" in other contexts likewise does not require specification of a dollar amount that can be calculated clerically. *See*, *e.g.*, *Muller Boat Works, Inc. v. Unnamed 52' House Barge*, 464 F. Supp. 2d 127, 149 (E.D.N.Y. 2006) ("Defendants are awarded . . . post-judgment interest, calculated by the Clerk of the Court at the rate prescribed by [statute]."); *United States v. Tate & Lyle N. Am. Sugars*, 228 F. Supp. 2d 308, 327 (S.D.N.Y. 2002) (similar).

This understanding of the word "award" serves the evident function of the statutory provision at issue. Once essentially all nonclerical determinations have been made, the lawyer typically need do no more work to further the client's interests in securing the amount that follows from those determinations, and success (for that result) is not contingent on the clerical calculation. Indeed, the applicable Department regulations already treat any further adjudication on the client's behalf (such as to alter the disability rating or effective date) as a separate "phase" of representation, and the Department separately pays any contingent fee due to a subsequent increase in the award amount. 38 C.F.R. § 20.609(h)(3)(i) (2007) (currently codified as amended at 38 C.F.R. § 14.636(h)(3)(i)). No statutory purpose would be served—to the contrary, the congressional interest in encouraging lawyers to take on representation of veterans would be disserved—by making entitlement to the fee depend on the Department's completion of the clerical task that remains.

In this case, moreover, we see nothing in the statute that precludes viewing the regional officer's January 31, 2008 rating decision as an "award" of "past-due benefits" "on the basis of [Mr. Finemore's] claim," § 5904(d)(2)(A)(i), just because, unbeknownst to the officer, Mr. Finemore had died a few days before the decision. The statutory language does not require that result, and the Department itself treated the January 31 decision as a proper rating decision. For example, the regional office's statement of the case on Mr. Jackson's fee request, which the office must prepare before a claim goes before the Board, lists a timeline of "Adjudicative Actions" relevant to Mr. Finemore's claim. J.A. 88–89. One of the listed adjudications, labeled "01-31-2008[:] Rating Decision granting service connection," summarizes the substance of the regional officer's disability-rating determination. J.A. 89. Likewise, when the regional office later awarded Mrs. Finemore's accrued-benefits claim, it stated that "[a] review of the record reveals at the time of death BVA had granted service connection . . . with an evaluation of 60 percent effective September 7, 1995," and listed the other rating percentages and effective dates from the January 31 rating decision. J.A. 66. And the decisions from the regional office and the Board regarding Mr. Jackson's contingent fee never called into question whether the Department had "awarded" Mr. Finemore past-due benefits—they stated only that payment could not be made. *See* J.A. 52 (office decision: "We are unable to pay any Attorney Fees due you due to the veteran's death. The past-due benefits can only be *payable* as accrued benefits . . . ." (emphasis added)); J.A. 81 (Board decision: "*Because a cash payment* 'from which the fee may be deducted' *was never made*, VA cannot honor the Contingent Fee Agreement between the Veteran and the appellant." (emphases added)).

Under the foregoing analysis, the Department made an award of past-due benefits on January 31, 2008, based

on Mr. Finemore's claim. No precedent supports a contrary conclusion. The ruling here applies § 5904's language to the award based on the claim of Mr. Finemore, with whom Mr. Jackson had a fee agreement, not to the award based on the distinct, though purely "derivative," claim of Mrs. Finemore for accrued benefits under § 5121. *Zevalkink v. Brown*, 102 F.3d 1236, 1241 (Fed. Cir. 1996); *see also Padgett*, 643 F.3d at 955 n.5. Mr. Jackson is not invoking § 5904 based on an award to a claimant different from the client with whom he had an agreement. This case thus is unlike *Hanlin v. Nicholson*, 474 F.3d 1355, 1360 (Fed. Cir. 2007), in which this court held that an attorney could not collect fees based on an award under 38 U.S.C. § 1314 to a deceased veteran's disabled son, with whom he had no fee agreement, even though the attorney had a fee arrangement with a surviving spouse who obtained an award under 38 U.S.C. § 1311 and the two awards were related. No authority contradicts our holding that § 5904 applies to Mr. Jackson's request for fees based on the claim of his client, Mr. Finemore.

## B

Our conclusion about the statute does not fully resolve this case. The statute says that, where there is a qualifying fee agreement and past-due-benefits award, the Department "may" direct payment of the fee out of the past-due benefits. § 5904(d)(3). In this court, however, the Department presents only one ground for withholding payment under that "may" language. And that ground is legally incorrect.

The Department relies on a regulation that prevents payment of fees unless "[t]he award of past-due benefits results in a cash payment . . . from which the fee may be deducted." 38 C.F.R. § 20.609(h)(1)(iii). As a straightforward factual matter, the award to Mr. Finemore did "result[] in a cash payment . . . from which the fee may be deducted," namely, the cash payment to Mrs. Finemore on

her purely derivative accrued-benefits claim, from which the Department did withhold Mr. Jackson's requested fee. The Department returns, therefore, to its statutory position and contends that § 5904 prohibits the natural reading of the regulation by requiring that the qualifying award of past-due benefits on a veteran's claim result in a cash payment to the veteran. Gov't Br. at 25–28; *see id.* at 26–27 (relying on *Hanlin*); *id.* at 28 ("Because no award of past-due benefits to Mr. Finemore resulted in a cash payment to him, Mr. Jackson's representation of Mr. Finemore does not fulfil[l] the conditions under which the VA, pursuant to its own regulation, will direct a payment of fees to an attorney."). But that is just the view of the statute that we have rejected as contrary to a proper construction. The statute does not require payment to the veteran for the fee-supporting benefit award to exist. The statute thus supplies no reason to give the current regulation a reading contrary to the straightforward meaning of its terms.

The Department suggests in passing that there is something inequitable about paying Mr. Jackson in the circumstances here. It says: "[s]ection 5904 does not permit the deduction of Mr. Jackson's attorney fee from Ms. Finemore's 'cash payment'"; Mr. Jackson's agreement with Mr. Finemore "cannot authorize the payment of Ms. Finemore's money to Mr. Jackson"; and "[w]ithout Ms. Finemore's written permission, the VA cannot divert a chunk of her benefits to her late husband's attorney." Gov't Br. at 25, 26, 28. Even as a general matter, the Department has shown no inequity in lowering the amount available to a surviving spouse by subtracting the attorney fee earned in securing all of the determinations needed to produce the ultimate, purely derivative, accrued-benefit award. And in this particular case, with Mrs. Finemore having died months even before the Veterans Court argument took place, *Jackson*, 26 Vet. App. at 462, the Department is ill-positioned to invoke "Ms.

Finemore's money" in an appeal to equity. At oral argument in this court, the Department stated that it lacks authority to pay Mrs. Finemore's estate the money it withheld from its payment in 2009 and plans to keep the money itself. Oral Arg. at 15:20–15:45. As between the Department and Mr. Jackson, equity does not appear to lie with the Department.

CONCLUSION

For those reasons, we reverse the decision of the Court of Appeals for Veterans Claims.

**REVERSED**